UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LEWIS BLACK,                                          :

                 Petitioner,                      :          11 Civ. 0480 (GBD) (AJP)

         -against-                           :          **REPORT AND RECOMMENDATION**

SUPERINTENDENT J. CONWAY,              :

              Respondent.                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

Pro se petitioner Lewis Black seeks a writ of habeas corpus from his February 28, 2007 conviction in Supreme Court, New York County, of first and second degree robbery, attempted second degree robbery, and second and third degree criminal possession of a weapon and his sentence of thirty-five years imprisonment, reduced on appeal to twenty-five years imprisonment. (Dkt. No. 1: Pet. ¶¶ 4-5, 10.)

Black's habeas petition asserts that:  (1) his conviction was not supported by sufficient evidence and was against the weight of the evidence because "the only evidence connecting [Black] to any of the three robberies was a lineup identification by a single witness, and the witness was unable to identify [Black] in court"; and (2) his sentence was excessive.  (Pet. ¶ 13.)

For the reasons set forth below, Black's habeas corpus petition should be DENIED.

**FACTS**

In the early morning of May 10, 2006, Lewis Black along with Steven Gilmore, William Butts, Thomas Burke and an unidentified fifth man committed a string of armed robberies culminating in a high speed chase across Upper Manhattan.  (Dkt. No. 10: Rodriguez Aff. Ex. A: Black 1st Dep't Br. at 2-3; Rodriguez Aff. Ex. B: State 1st Dep't Br. at 2-4.)  Black was charged with the robbery of Keith Wigfall and the attempted robbery of Wigfall's girlfriend Clarice Winchester, as well as criminal possession of the gun used during the robberies.  (Black 1st Dep't Br. at 2; State 1st Dep't Br. at 4-5.)

**The Trial**

On January 23, 2007, Black and co-defendants Gilmore and Butts proceeded to trial before Justice Edward McLaughlin and a jury in Supreme Court, New York County.  (Dkt. No. 9: Trial Transcript ("Tr.") 1.)[1]

Around 1:00 a.m. on May 10, 2006, Erik Vilar was walking home from a convenience store at Lexington Avenue and 107th Street when he passed a dark car with five men inside.  (Dkt. No. 9: Vilar: Tr. 33-38, 75-76.)  Moments later, Vilar turned around to see William Butts pointing a silver gun at him.  (Vilar: Tr. 41, 51, 68, 83.)  Butts and a second man robbed Vilar of his wallet, cell phone and jewelry before leaving in that same car.  (Vilar: Tr. 42-44, 46-49, 83-84, 86-88, 90.)

---

[1]     Co-defendant Thomas Burke pled guilty to second degree robbery and was sentenced to seven years imprisonment.  (State 1st Dep't Br. at 5 & n.3.)

Approximately fifteen minutes later, Keith Wigfall and his girlfriend Clarice Winchester were walking to a laundromat when they were approached near Madison Avenue and 121st Street by Black, Gilmore and Butts.  (Wigfall: Tr. 150-55, 170; Winchester: Tr. 395-97.) Gilmore pointed a silver gun at Wigfall and asked him to remove his chain.  (Wigfall: Tr. 153-55; Winchester: Tr. 397, 399, 400, 403, 410, 412, 415-17.)  Butts patted down Wigfall and took his wallet.  (Wigfall: Tr. 153-156, 163, 172, 175, 186; Winchester: Tr. 404.)  Gilmore instructed Black to ask Winchester for her money.  (Winchester: Tr. 399-400, 404.)  Black approached Winchester from behind, asked if she had any money or jewelry and patted down her pockets to check. (Wigfall: Tr. 156-57; Winchester: Tr. 399, 404, 414-15, 416.)  Finding nothing of value, Black waited until Gilmore and Butts were finished robbing Wigfall and fled the scene with Butts. (Wigfall: Tr. 160-61, 171; Winchester: Tr. 404-06.)  Wigfall did not see them head to a car. (Wigfall: Tr. 190.)  Wigfall used his cellphone to call 911.  (Wigfall: Tr. 164; Winchester: Tr. 421.)

At 2:00 a.m. that morning, Henry Cabrera witnessed two men robbing Toribio Castillo near Riverside Drive and 141st Street.  (Cabrera: Tr. 430, 434-35, 438-39.)  Cabrera saw the two robbers and two other men waiting in the vicinity get into a dark green Mazda.  (Cabrera: Tr. 440, 444.)  Cabrera followed the car and alerted Officer John Romano that he was pursuing robbers.  (Romano: Tr. 94; Cabrera: Tr. 441, 443.)  Officer Romano followed the green Mazda and observed five men inside the car.  (Romano: Tr. 95, 105, 106.)  The robbers led police on a high speed chase that ended when the Mazda struck a fire hydrant near Twelfth Avenue and 125th Street and the five occupants fled on foot.  (Romano: Tr. 98-100, 103-05; Castillo: Tr. 129-131; Santana:

Tr. 199-204, 236-38; Albertini: Tr. 344-46, 349-50; Sorensen: Tr. 361; Acosta: Tr. 467-69, 471, 474.)

Police Officer Joseph Albertini observed another officer chasing two men away from the crashed green Mazda.  (Albertini: Tr. 346, 349-50.)  Officer Albertini joined the pursuit and apprehended Lewis Black.  (Albertini: Tr. 346-47, 351.)  Gilmore, Butts and Burke also were apprehended fleeing the vehicle, while the fifth man escaped.  (Castillo: Tr. 132-34; Santana: Tr. 204; Medina: Tr. 243; Sorensen: Tr. 359, 362; Acosta: Tr. 469-70.)  At the crash scene, Henry Cabrera identified the green Mazda as the same vehicle he had followed from the crime scene.  (Cabrera: Tr. 451-53.)  The car was registered to Thomas Burke.  (Tr. 514.)  Cabrera confirmed that the four men in police custody were those he had seen earlier in the night, stating, "'[t]hat's the four guys and that's the vehicle they jumped into.'"  (Cabrera: Tr. 451, 453.)

The police recovered from Gilmore a cell phone and a wallet containing Toribio Castillo's identification.  (Castillo: Tr. 135-36; Santana: Tr. 206-07, 229-30; Medina: Tr. 244-46; Jenkins: Tr. 356.)  Officers found jewelry in Butt's pocket belonging to Wigfall and Vilar as well as Vilar's cell phone.  (Vilar: Tr. 55-57; Wigfall: Tr. 161; Sorensen: Tr. 362-63, 365-66, 367.)  The police found inside the green Mazda Wigfall's hospital ID card and cell phones belonging to Black, Gilmore, Butts, Burke and an unidentified fifth person.  (Wigfall: Tr. 162-63; Santana: Tr. 218-19, 222-23; Acosta: Tr. 472; Tr. 478; Ramirez: Tr. 494, 497, 498, 501-03.)[2]

---

[2]    Analysis of Black's cell phone records showed a phone call to Gilmore at 8:20 p.m. on May 9, and a direct "walkie-talkie" connection with Burke at 1:50 a.m. on May 10.  (Tr. 478; Ramirez: Tr. 493, 494, 496, 503-04, 506.)  Black's telephone number was listed in the cell (continued...)

During the car chase, Officer Junio Acosta and his partner had observed the car's rear door open momentarily near Convent Avenue and 142nd Street.  (Santana: Tr. 200-01, 238; Acosta: Tr. 467-68, 473-74.)  Later that night, the police recovered a silver handgun underneath a parked car near that location.  (Obojkovits: Tr. 111-13; Miller: Tr. 332-33.)  The magazine of the gun was dislodged from the handle, consistent with the gun having been thrown or dropped.  (Obojkovits: Tr. 113-17; McVeigh: Tr. 386.)  Vilar, Wigfall and Winchester identified the gun as resembling the one used in the robberies.  (Vilar: Tr. 53; Wigfall: Tr. 157, 176; Winchester: Tr. 410.)

Later that same day, Wigfall and Winchester viewed three police lineups containing the suspected robbers.  (Wigfall: Tr. 166-67, 184, 193; Sanatore: Tr. 290-91; Winchester: Tr. 411-12.)  Winchester identified Gilmore as the gunman and Black as the man who patted her down during the robbery.  (Sanatore: Tr. 295-300; Winchester: Tr. 412-15.)  There was no doubt in Winchester's mind that her lineup identification of Black was correct.  (Winchester: Tr. 415, 416.)  Wigfall identified Butts as the man who had patted him down during the robbery, but was unable to identify either Gilmore or Black.  (Wigfall: 167, 172-73, 175, 178-184, 186, 191-94; Sanatore: Tr. 293-94, 297-99, 305.)

Winchester identified Gilmore at trial as the gunman, but she was unable to identify Black at trial.  (Winchester: Tr. 415-17.)  The prosecutor's summation noted that Black had "gained weight, grown out [his] hair, [and] grown a beard" during his nine months in jail.  (Tr. 638.)  The

---

2/      (...continued)
        phones of Gilmore and Burke.  (Tr. 478; Ramirez: Tr. 501, 503.)

jurors were shown Black's arrest photo for comparison.  (Santana: Tr. 230-31; Tr. 633.)  Wigfall

identified Black at trial, but testified that he was the gunman.  (Wigfall: Tr. 173-75, 177, 178-84.)

**Verdict and Sentence**

On January 30, 2007, Black was convicted of first and second degree robbery,

attempted second degree robbery, and second and third degree criminal possession of a weapon.

(Dkt. No. 9: Tr. 736-38, 741-43.)

At sentencing on February 28, 2007, Black was adjudicated a predicate violent felony

offender based on his 1995 first-degree robbery conviction.  (Dkt. No. 10: Rodriguez Aff. Ex. A:

Black 1st Dep't Br. at 22.)  Justice McLaughlin said he was confident the group would have

continued committing robberies if not for the intervention of a good Samaritan, and told Black that

"'the terror of having a bunch of thugs come up and stick a gun in their face, threaten them, and take

their property is something that you'll never get the chance to do again because your career is

finished.'"  (Black 1st Dep't Br. at 24.)  Justice McLaughlin sentenced Black to an aggregate term

of thirty-five years in prison:  twenty-five years for first degree robbery and a consecutive term of

ten years for second degree criminal possession of a weapon.  (Black 1st Dep't Br. at 23; Rodriguez

Aff. Ex. B: State 1st Dep't Br. at 58-59.)[3/]

---

[3/]     Justice McLaughlin also sentenced Black to concurrent prison terms of fifteen years for
second degree robbery, seven years for attempted second degree robbery and seven years for
third degree criminal possession of a weapon.  (Black 1st Dep't Br. at 23-24; State 1st Dep't
Br. at 59.)

Co-defendant Steven Gilmore was found guilty of first degree robbery, three counts
of second degree robbery, attempted second degree robbery and second and third degree
criminal possession of a weapon.  (Tr. 739-40.)  Gilmore was sentenced to thirty years
(continued...)

**Black's Direct Appeal**

Represented by the Center for Appellate Litigation, Black's appeal to the First Department argued that: (1) the verdict was based on insufficient evidence and was against the weight of the evidence because "the only evidence connecting [Black] to any of the three robberies was a lineup identification by a single witness [Winchester], and the witness was unable to identify [Black] in court" (Dkt. No. 10: Rodriguez Aff. Ex. A: Black 1st Dep't Br. at 25-36); (2) running the criminal possession of a weapon sentence consecutive to the first degree robbery sentence was illegal (Black 1st Dep't Br. at 37-41); and (3) the aggregate thirty-five year sentence "was excessive and should be reduced in the interest of justice" (Black 1st Dep't Br. at 42-46).

On October 15, 2009, the First Department affirmed Black's conviction, holding in pertinent part:

> We reject defendant Black's arguments concerning the weight and sufficiency of the evidence supporting his conviction. There is no basis for disturbing the jury's determinations concerning identification. A victim made a reliable lineup identification, and her inability to identify Black at trial was satisfactorily explained.
>
> . . .

---

[3/]    (...continued)
imprisonment, reduced on appeal to twenty years. People v. Gilmore, 74 A.D.3d 566, 567, 902 N.Y.S.2d 346, 346 (1st Dep't), appeal denied, 15 N.Y.3d 893, 912 N.Y.S.2d 581 (2010). (See also Black 1st Dep't Br. at 24 n.3.)

Co-defendant William Butts was found guilty of two counts of first degree robbery, four counts of second degree robbery, attempted second degree robbery and second and third degree criminal possession of weapon (Tr. 738-39), and sentenced to thirty-five years imprisonment, reduced on appeal to twenty-five years. People v. Black, 66 A.D.3d 512, 512, 887 N.Y.S.2d 57, 58 (1st Dep't 2009), appeal denied, 13 N.Y.3d 937, 895 N.Y.S.2d 327 (2010). (See also Black 1st Dep't Br. at 24 n.3.)

> We reject Black's claim that the court unlawfully imposed consecutive sentences for robbery and weapon possession.  The evidence established that Black, while acting in concert with other persons, possessed the weapon at a time other than during the robbery, and with a separate intent to use it unlawfully against other potential victims.

People v. Black, 66 A.D.3d at 512-13, 887 N.Y.S.2d at 58 (citations omitted).  The First Department modified Black's sentence "in the interest of justice" by having all sentences run concurrently, thus reducing his aggregate sentence to twenty-five years imprisonment.  People v. Black, 66 A.D.3d at 512, 887 N.Y.S.2d at 58.

On January 26, 2010, the New York Court of Appeals denied leave to appeal.  People v. Black, 13 N.Y.3d 937, 895 N.Y.S.2d 327 (2010).[4/]

**Black's Federal Habeas Petition**

Black's pro se federal habeas corpus petition argues that:  (1) his conviction was based on insufficient evidence and was against the weight of the evidence because "the only evidence connecting [Black] to any of the three robberies was a lineup identification by a single witness [Winchester], and the witness was unable to identify [Black] in court"; and (2) his sentence "was excessive and should be reduced in the interest of justice."  (Dkt. No. 1: Pet. ¶ 13.)

---

[4/]   Despite attaching the First Department briefs, Black's counsel's letter seeking leave to appeal sought leave only as to the insufficiency of the evidence claim.  (Rodriguez Aff. Ex. D: Leave Ltr. to Ct. App.)

## ANALYSIS

## I.   THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."  Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[5/]

---

[5/]   See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 129 S. Ct. 1411, 1418 (2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1691, 1693 (2011);  Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[6/] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[7/] "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009). "A petitioner can not win habeas relief solely by demonstrating that the

---

[6/]   Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[7/]   Accord, e.g., Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 130 S. Ct. 642 (2009); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110;

accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .   A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[8/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application'

clause, a federal habeas court may grant the writ if the state court identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

---

[8/]    Accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; Portalatin v. Graham, 624 F.3d at 79; Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d 149, 156 (2d Cir. 2009), cert. denied, 131 S. Ct. 320 (2010); Dunlap v. Burge, 583 F.3d at 164; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[9] However,

"[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct.

at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different

from an incorrect application of federal law." Id.[10] Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable." Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[11] "Objectively unreasonable" is different from "clear error."

---

[9]   Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1399; Waddington v. Sarausad, 555 U.S.
179, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439;
Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Bierenbaum v. Graham, 607 F.3d
at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009); Jones
v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden,
443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007);
Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[10]   See also, e.g., Renico v. Lett, 130 S. Ct. 1855, 1862 (2010); Waddington v. Sarausad, 129
S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at
1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply
because that court concludes in its independent judgment that the state-court decision applied
[a Supreme Court case] incorrectly.'" (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25,
123 S. Ct. 357, 360 (2002))); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Dunlap
v. Burge, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant
federal law should have been interpreted differently than the way it was interpreted by the
state court yet still conclude that the state court's application of the federal law was not
unreasonable."); Brisco v. Ercole, 565 F.3d at 87-88; Jones v. West, 555 F.3d at 96; Davis
v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d
at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray,
396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25;
DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the
state court's decision was not an unreasonable application of, or contrary to, clearly
established federal law as defined by Section 2254(d), we may not grant habeas relief even
if in our judgment its application was erroneous.").

[11]   Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
(continued...)

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a "'substantially higher threshold'" than incorrectness.  Renico v. Lett, 130 S. Ct. at 1862; accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1420.[12/]  Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'"  Cullen v. Pinholster, 131 S. Ct. at 1398 (citations omitted).

---

[11/]        (...continued)
Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Portalatin v. Graham, 624 F.3d at 79; Dunlap v. Burge, 583 F.3d at 165; Davis v. Grant, 532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[12/]        However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Yung v. Walker, 341 F.3d at 110; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Loliscio v. Goord, 263 F.3d at 184.

"[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149.[13/] "Even if the state court issued a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert. denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[14/]

---

[13/]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

<u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786; <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1864; <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d at 157; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 166; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

[14/]    <u>Accord</u>, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 47-48; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140-41; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v.
(continued...)

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."  Yung v. Walker, 341 F.3d at 109; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398; Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); Renico v. Lett, 130 S. Ct. at 1862; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.  "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398 ("The petitioner carries the burden of proof."); Georgison v. Donelli, 588 F.3d at 154.  As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . . [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decisions conflict with [the Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

---

14/      (...continued)
Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786-87.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 784 (citations to <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 312, & other cases omitted); <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1402; <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853; <u>Early</u> v. <u>Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); <u>Wilson</u> v. <u>Mazzuca</u>, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'")[15/]  "'[A] habeas court must determine

---

[15/]    <u>See also</u>, <u>e.g.</u>, <u>Wade</u> v. <u>Herbert</u>, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); <u>Francolino</u> v. <u>Kuhlman</u>, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), <u>cert. denied</u>, 543 U.S. 872, 125 S. Ct. 110 (2004); <u>Jenkins</u> v. <u>Artuz</u>, 294 F.3d 284,
(continued...)

17

what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" Cullen v. Pinholster, 131 S. Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398.

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations:  "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g.,

---

15/      (...continued)
291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.   BLACK'S SUFFICIENCY AND WEIGHT OF THE EVIDENCE CLAIMS SHOULD BE DENIED

Black claims that his conviction was supported by insufficient evidence and was against the weight of the evidence. (Dkt. No. 1: Pet. ¶ 13; see page 8 above.)  The First Department rejected "Black's arguments concerning the weight and sufficiency of the evidence supporting his conviction," noting that "[a] victim made a reliable lineup identification, and her inability to identify Black at trial was satisfactorily explained."  People v. Black, 66 A.D.3d 512, 512, 887 N.Y.S.2d 57, 58 (1st Dep't 2009), appeal denied, 13 N.Y.3d 937, 895 N.Y.S.2d 327 (2010); see also page 7 above.

### A.   Legal Principles Governing Sufficiency of the Evidence Claims

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)).  However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. at 317, 99 S. Ct. at 2788.  Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. at 324, 99 S. Ct. at 2791-92.

> The petitioner bears a very heavy burden:
>
> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant.  Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt.  In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108, 103 S. Ct. 2456, 2457 (1983).

> The habeas court's review of the jury's findings is limited:
>
> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).

The Jackson v. Virginia "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson v. Virginia, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; accord, e.g., Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

**B.**   **Application of the Standard to Black's Sufficiency of the Evidence Claim**

Black's sufficiency of the evidence claim alleges that Winchester's lineup identification was the sole evidence identifying him as a participant in the robbery of Wigfall and Winchester.  (Dkt. No. 1: Pet. ¶ 13.)[16]  Although Black's federal habeas petition does not expand on this argument, his direct appeal to the First Department challenged Winchester's ability to clearly view Black during the robbery and argued that Winchester's inability to identify him at trial undermined her lineup identification.  (Dkt. No. 10: Rodriguez Aff. Ex. A: Black 1st Dep't Br. at 32-34.)  Moreover, Black asserted that Wigfall's inability to identify Black in a lineup, as well as Wigfall's in-court misidentification of Black as the gunman, contradicted Winchester's lineup testimony.  (Black 1st Dep't Br. at 33 n.7.)

To the extent Black's habeas sufficiency of the evidence claim argues that Winchester's identification evidence was not credible, such claim lacks merit.  The law is well established that questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility:  "'[f]ederal habeas courts are not free to reassess the facts specific credibility judgments by juries or to weigh conflicting testimony.  On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'"  Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.) (quoting

---

[16]   Black does not challenge whether all elements of the crime were proven beyond a reasonable doubt. Therefore, the Court need only address the sufficiency of the evidence identifying Black as the person who committed the crime.

Anderson v. Senkowski, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. Sept. 3, 1992), aff'd

mem., 992 F.2d 320 (2d Cir.1993)).[17]

---

[17]   See also, e.g., Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) ("Although appellants emphasize the lack of physical evidence connecting them to the murder and contend that the testifying witnesses were not credible, 'a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'"), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Martin v. Brown, No. 08-CV-0316, 2010 WL 1740432 at *9 (E.D.N.Y. Apr. 29, 2010) ("It is well established that a habeas court may neither 'disturb the jury's findings with respect to the witnesses' credibility,' nor 'make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony.'" (citation omitted)); Cruz v. Ercole, 07 Civ. 9868, 2010 WL 245038 at *8 (S.D.N.Y. Jan. 20, 2010), report & rec. adopted, 2010 WL 4860668 (S.D.N.Y. Nov. 29, 2010); Guity v. Ercole, 07 Civ. 0728, 2007 WL 3284694 at *5 (S.D.N.Y. Nov. 6, 2007) ("This Court is unable to reassess the 'fact specific credibility judgments by juries or to weigh conflicting testimony [o]n collateral review[,]' and 'must presume that the jury resolved any questions of credibility in favor of the prosecution.'" (citation omitted)); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *12 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.); Huber v. Schriver, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction. . . . However, under both the state law. . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury . . . ."); Carromero v. Strack, 98 Civ. 3519, 1998 WL 849321 at *5 (S.D.N.Y. Nov. 19, 1998) (Peck, M.J.) (evidence sufficient where jury credited prosecution witnesses' testimony "despite some inconsistencies between their trial testimony and prior statements to the police and to the grand jury"); Davis v. Senkowski, No. 97-CV-2328, 1998 WL 812653 at *5 (E.D.N.Y. Aug. 6, 1998) ("The jury here chose to believe [the prosecution witness's] testimony despite any inconsistencies in the evidence, and I will not reassess that decision."); Williams v. Bennet, 97 Civ. 1628, 1998 WL 236222 at *5 (S.D.N.Y. Apr. 20, 1998) ("[Petitioner] relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury.  These inconsistencies were placed before the jury by the defense, which made them a central focus of its case.  The jury's decision to credit [the victim's] testimony, despite its inconsistencies, over [petitioner's] testimony, is fully supported by the record."); Taxiarhopoulos v. Spence, No. CV 92-0790, 1992 WL 403112 at *4 (E.D.N.Y. Dec. 28, 1992) (The petitioner "cannot show that the evidence was insufficient to support conviction.  For example, he challenges the credibility of the main prosecution witness . . ., pointing to alleged inconsistencies in his testimony.  This, however, was an argument made to, and properly resolved by, the trial jury."); Fagon

(continued...)

At trial, the jury heard that, hours after Black was apprehended, Winchester identified him at a lineup as the man who patted her down during the robbery.  (See page 5 above.)  Moreover, the prosecutor explained Winchester's inability to identify Black at trial by arguing that Black had "gained weight, grown out [his] hair, [and] grown a beard" since the robbery.  (See page 5 above.)  Additionally, Winchester's identification was supported by the evidence that Black was in the Mazda with the other defendants and that Black had been in telephone contact with the other defendants throughout the night (see pages 3-4 & n.2 above), facts Black conceded in his direct appeal.  (Black 1st Dep't Br. at 30: "Concededly, the evidence supported an inference that [Black] was present in the car that night, and during these two robberies.").  Despite Black's counsel's closing argument attacking Winchester's credibility (Tr. 603-08), the jury chose to believe Winchester, and this Court cannot reverse the jury's conclusion.

Furthermore, the fact that Winchester was the only witness to pick Black out of a lineup (and Wigfall did not do so) does not change the result.  See, e.g., United States v. Frampton, 382 F.3d 213, 222 (2d Cir.) ("'[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.'"), cert. denied, 543 U.S. 1037, 125 S. Ct. 815 (2004); Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) ("[T]his was 'not a case in which the sole witness was uncertain of his identification . . . [n]or is it one of testimony incredible as a matter of law.'"); United States v. Danzey, 594 F.2d 905, 916 (2d Cir.) ("[T]he testimony of a single, uncorroborated

---

17/     (...continued)
        v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony").

eyewitness is generally sufficient to support a conviction."), cert. denied, 441 U.S. 951, 99 S. Ct. 2179 (1979); Jackson v. Heath, 10 Civ. 3449, 2010 WL 3075557 at *14 (S.D.N.Y. Aug. 6, 2010) (Peck, M.J.) ("The fact that Cochrane was the only witness . . . and that there were inconsistencies in her testimony" did not make the evidence insufficient.); Cox v. Herbert, 420 F. Supp. 2d 144, 162 (W.D.N.Y. 2006) (Complainant's "testimony alone would have been sufficient, even without the corroborating witnesses" to establish that defendant had shot her.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *16 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (testimony of single witness sufficient), report & rec. adopted, 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006).

Any inconsistencies in the witnesses' testimony (e.g., the difference between Winchester's lineup identification of Black as the man who patted her down and Wigfall's in-court identification of Black as the gunman) would not change the result.  See, e.g., United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies.  We will defer to the jury's assessment of credibility."), cert. denied, 534 U.S. 1148, 122 S. Ct. 1111 (2002); Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony); Means v. Barkley, 98 Civ. 7603, 2000 WL 5020 at *4 (S.D.N.Y. Jan. 4, 2000) ("The testimony of a single uncorroborated witness is sufficient to achieve a showing of guilt beyond a reasonable doubt even if that witness's testimony is less than entirely consistent." (citation omitted)).[18]

---

[18]   See also, e.g., Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *29 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *22
(continued...)

In short, here, as in prior cases, "'the jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses . . . . We cannot say that no rational [factfinder] could have found guilt beyond a reasonable doubt on all the evidence.'" Jamison v. Grier, 2002 WL 100642 at *12 (quoting Gruttola v. Hammock, 639 F.2d at 928).[19]

Viewing the evidence in the light most favorable to the prosecution, as the Court must, Black's sufficiency of the evidence claim should be DENIED.

## C.   **Black's Weight of the Evidence Claim is Not Cognizable on Habeas Review**

Black's habeas petition further claims that the jury's verdict was against the weight of the evidence. (Dkt. No. 1: Pet. ¶ 13.).  This claim is not cognizable on habeas review.

A challenge to a verdict based on the weight of the evidence differs from one based on the sufficiency of the evidence:  "'[T]he "weight of the evidence" argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles.'" Woullard v. Phillips, 04 Civ. 2225, 2007 WL 1958971 at *7 (S.D.N.Y. July 6, 2007) (quoting Garbez v. Greiner, 01 Civ. 9865, 2002 WL 1760960

---

[18]   (...continued)
(S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); Wilson v. Senkowski, 02 Civ. 0231, 2003 WL 21031975 at *11 & n.19 (S.D.N.Y. May 7, 2003) (Peck, M.J.) (& cases cited therein); Jamison v. Grier, 01 Civ. 6678, 2002 WL 100642 at *12-13 (S.D.N.Y. Jan. 25, 2002) (Peck, M.J.) (inconsistencies in witness testimony does not make evidence insufficient); Simpson v. Portuondo, 01 Civ. 1379, 2001 WL 830946 at *9 (S.D.N.Y. Jul.12, 2001) (Peck, M.J.).

[19]   Accord, e.g., Rodriguez v. Senkowski, 2004 WL 503451 at *29; Besser v. Walsh, 2003 WL 22093477 at *22; Wilson v. Senkowski, 2003 WL 21031975 at *11 & n.18 (& cases cited therein).

at *8 (S.D.N.Y. July 30, 2002) (citing <u>People</u> v. <u>Bleakley</u>, 69 N.Y.2d 490, 515 N.Y.S.2d 761 (1987))), <u>report & rec. adopted</u>, 2007 WL 2542433 (S.D.N.Y. Sept. 6, 2007).[20/]

It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review. <u>E.g.</u>, <u>McKinnon</u> v. <u>Superintendent, Great Meadow Corr. Facility</u>, No. 08-2828, 2011 WL 2005112 at *4 (2d Cir. May 24, 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); <u>Young</u> v. <u>Kemp</u>, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . ."), <u>cert. denied</u>, 476 U.S. 1123, 106 S. Ct. 1991 (1986); <u>Ex parte Craig</u>, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence . . ."), <u>aff'd sub nom.</u> Craig

---

[20/]     The New York Court of Appeals in <u>Bleakley</u> explained the difference as follows:

> Although the two standards of intermediate appellate review – legal sufficiency and weight of evidence – are related, each requires a discrete analysis. For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

> To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."

<u>People</u> v. <u>Bleakley</u>, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted).

v. Hecht, 263 U.S. 255, 44 S. Ct. 103 (1923); Flores v. Ercole, No. 06-CV-6751, 2010 WL 1329036 at *8 (E.D.N.Y. Mar. 31, 2010); Torres v. Fisher, 06 Civ. 6579, 2010 WL 1338088 at *4 (S.D.N.Y. Mar. 31, 2010); Hyatt v. Bellnier, 09 Civ. 6594, 2009 WL 3423359 at *10 & n.22 (S.D.N.Y. Oct. 23, 2009) (Peck, M.J.) (& cases cited therein); Woullard v. Phillips, 2007 WL 1958971 at *7; Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *8-9 (S.D.N.Y. Mar. 28, 2006) (Peck, M.J.); Rodriguez v. Senkowski, 2004 WL 503451 at *26-27 & n.33 (& cases cited therein); Garbez v. Greiner, 2002 WL 1760960 at *8 ("by raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028 at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); McBride v. Senkowski, 98 Civ. 8663, 2002 WL 523275 at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (weight of evidence is not cognizable on habeas review).[21/]

---

[21/]    See also, e.g., Guillen v. Powers, No. 07 CV 5348, 2009 WL 1106936 at *6 (E.D.N.Y. Apr. 23, 2009); Venable v. Walsh, No. 05-CV-84, 2009 WL 750230 at *9 (E.D.N.Y. Mar. 19, 2009); Guerrero v. Tracey, 425 F. Supp. 2d 434, 447 (S.D.N.Y. 2006); Feliz v. Conway, 378 F. Supp. 2d 425, 430 n.3 (S.D.N.Y. 2005); Glisson v. Mantello, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003); Pitter v. Fischer, 234 F. Supp. 2d 342, 349 n.6 (S.D.N.Y. 2002); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim." (citations omitted)); Peralta v. Bintz, 00 Civ. 8935, 2001 WL 800071 at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied."); Kearse v. Artuz, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief."); Rodriguez v. O'Keefe, 96 Civ. 2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight

(continued...)

Accordingly, Black's sufficiency and weight of the evidence habeas claims should be <u>DENIED</u>.

## III.   BLACK'S EXCESSIVE SENTENCE HABEAS CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW

Black's excessive sentence claim (Dkt. No. 1: Pet. ¶13) should be denied because it is not cognizable on habeas review.[22]

An excessive sentence claim does not provide a basis for habeas relief, because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." <u>White</u> v. <u>Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992).[23]

---

[21]   (...continued)
of the evidence is not cognizable on <u>habeas</u> review."), <u>aff'd</u>, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), <u>cert. denied</u>, 522 U.S. 1123, 118 S. Ct. 1068 (1998); <u>cf.</u> <u>Maldonado</u> v. <u>Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim; "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues").

[22]   In addition, this claim is unexhausted and procedurally barred because, despite attaching the First Department briefs in his leave letter, Black's counsel did not specifically raise this claim before the New York Court of Appeals, while extensively raising his sufficiency of the evidence claim.  (<u>See</u> page 8 n.4 above.)  <u>See</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Duncan</u>, 411 F.3d 340, 345 (2d Cir. 2005) ("Even if the original Appellate Division briefs are submitted along with the leave application, New York's highest court has no duty to 'look for a needle in a paper haystack.'  Because [petitioner's] letters to the New York Court of Appeals nowhere raised [this] issue . . . , we agree with the district court that this issue is procedurally defaulted." (citations omitted)); <u>Jackson</u> v. <u>Lee</u>, 10 Civ. 3062, 2010 WL 4628013 at *19-21 & nn.28-29 (S.D.N.Y. Nov. 16, 2010) (Peck, M.J.) ("Merely attaching his First Department briefs is not sufficient to have exhausted [these grounds] in the New York Court of Appeals, in light of the lengthy discussion of [other grounds] in [petitioner's] leave to appeal letter.") (& cases cited therein), <u>report & rec. adopted</u>, 2010 WL 5094415 (S.D.N.Y. Dec. 10, 2010).

[23]   <u>Accord</u>, <u>e.g.</u>, <u>Robinson</u> v. <u>Smith</u>, 09 Civ. 8222, 2011 WL 1849093 at *27 (S.D.N.Y. May 17, 2011) (Peck, M.J.); <u>Jackson</u> v. <u>Lee</u>, 2010 WL 4628013 at *44; <u>Garcia</u> v. <u>Rivera</u>, 07 Civ. (continued...)

Justice McLaughlin sentenced Black to twenty-five years imprisonment for first degree robbery, and a consecutive sentence of ten years imprisonment for second degree criminal possession of a weapon.  (See page 6 above.)  The First Department reduced Black's sentence by having all sentences run concurrently.  (See page 8 above.)  It is undisputed that Black's sentence is within the range prescribed by New York law.  Black was convicted of the class B felony of first degree robbery, Penal Law § 160.15.  (See page 6 above.)  As Black was a second violent felony offender (see page 6 above), Justice McLaughlin was authorized to impose a maximum term of twenty-five years imprisonment for Black's first degree robbery conviction.  See Penal Law §§ 70.02(1)(a), 70.04(1)(b)(ii), 70.04(3)(a).[24]/

---

[23]/ (...continued)
2535, 2007 WL 2325928 at *17 & n.18 (S.D.N.Y. Aug. 16, 2007) (Peck, M.J.) (& cases cited therein); see, e.g., Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."); see also, e.g., Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948) (severity of sentence generally not reviewable on habeas).

[24]/ Although they do not affect the aggregate term of twenty-five years imprisonment, each of Black's other sentences also are within the range prescribed by New York law.  For the class C felonies of second degree criminal possession of a weapon and second degree robbery, Penal Law §§ 160.10, 265.03, Justice McLaughlin was authorized to impose maximum determinate sentences of fifteen years imprisonment.  See Penal Law § 70.04(3)(b).  Justice McLaughlin sentenced Black to ten years and fifteen years imprisonment, respectively, for those offenses.  (See page 6 & n.3 above.)  For the class D felonies of third degree criminal possession of a weapon and attempted second degree robbery, Penal Law §§ 110.05(5), 160.10, 265.02, Justice McLaughlin imposed a determinate sentence of seven years imprisonment (see page 6 n.3 above), the maximum prescribed by law.  Penal Law § 70.04(3)(c).

Because Black's sentence is within the statutory range, it is not reviewable on habeas corpus by this Court as "excessive."  Accordingly, Black's excessive sentence habeas claim should be <u>DENIED</u>.

## **CONCLUSION**

For the reasons set forth above, Black's habeas petition should be <u>DENIED</u> in its entirety, and a certificate of appealability should not be issued.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.[25/]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Daniels (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

---

[25/]     If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from opposing counsel.  <u>See</u> <u>Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:      New York, New York
            June 30, 2011

                                    Respectfully submitted,

                                    Andrew J. Peck
                                    United States Magistrate Judge

Copies to:   Lewis Black
             Leilani Rodriguez, Esq.
             Judge George B. Daniels